WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicole Cox,<br><br>  Plaintiff,<br><br>v.<br><br>Global Tool Supply LLC, et al.,<br><br>  Defendants. | No. CV-20-00152-PHX-GMS<br><br>**ORDER** |

Before the Court is a Motion for Summary Judgment (Doc. 71) brought by Defendants Global Tool Supply LLC ("Global Tool") and Bill Rozakis ("Mr. Rozakis"). For the following reasons, Defendants' motion is granted in part and denied in part.

**BACKGROUND**

Global Tool is a call center in the business of brokering the "sales of tools to construction-related businesses." (Doc. 72 ¶ 2.) Nicole Cox ("Plaintiff") was employed by Global Tool as a part-time receptionist for approximately six weeks. (Doc. 72 ¶ 4.) During the time she worked at Global Tool, Plaintiff claims that Mr. Rozakis—her supervisor, and the founder and managing member of Global Tool—regularly made inappropriate comments to her about her physical appearance, his sex life, and his prior relationship with a former office receptionist for Global Tool. (Doc. 74 ¶¶ 49–53.) According to Plaintiff, she stopped coming in to work after Mr. Rozakis offered to be her

"sugar daddy" on October 31, 2018.[1] (Doc. 74 ¶ 55.)

On March 18, 2019, Plaintiff emailed the Equal Employment Opportunity Commission ("EEOC"), informing the agency that she wished to file a complaint. (Doc. 72-2 at 22.) On March 19, 2019, Patricia Miner ("Ms. Miner"), a Supervisory Investigator at the EEOC, instructed Plaintiff to schedule an intake interview and told her that "in order for a charge to be timely filed, it must be filed within 300 days (in some cases within 180 days) of the date of the alleged harm." (Doc. 72-2 at 21.) Plaintiff scheduled an appointment with the EEOC for May 31, 2019 and emailed the EEOC to confirm that her charge would still be valid even though 180 days would have elapsed since she stopped working at Global Tool. (Doc. 74-1 at 95.) Ms. Miner responded that the applicable deadline was 300 days after the unlawful employment practice and that Plaintiff's appointment was timely. (Doc. 74-1 at 96.)

Plaintiff filed a formal charge with the EEOC on June 10, 2019, (Doc. 44 at ¶28), which issued a Right to Sue letter on October 24, 2019. (Doc. 74-1 at 101.) Plaintiff subsequently filed suit in this Court. In her final amended complaint, she seeks recovery under four theories. Count I asserts a hostile work environment claim under Title VII, 42 U.S.C. § 2000e-2; Count II asserts a claim for sex discrimination under the Arizona Civil Rights Act ("ACRA"), Ariz. Rev. Stat. § 41-1463; Count III asserts a claim for constructive discharge arising out of the Arizona Employment Protection Act ("EPA"), Ariz. Rev. Stat. § 23-1502; and Count IV asserts a claim for Intentional Infliction of Emotional Distress ("IIED"). (Doc. 44 at 8–12.) Defendants now seek summary judgment on all claims.

## DISCUSSION

### I. Legal Standard

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary

---

[1] A "sugar daddy" is an individual who is "willing to pay money in exchange for companionship," while a "sugar baby" is an "attractive individual[] who seek[s] to be pampered by a benefactor." *See Reflex Media, Inc. v. Vibe Media, Inc.*, No. CV 16-2243 PA (JPRx), 2016 WL 11000047, at *1 (C.D. Cal. July 18, 2016).

judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

## II. Analysis

### A. Title VII

For purposes of Title VII, an employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). Plaintiff's allegations fall within the ambit of Title VII only if Global Tool is an "employer" within the definition of the statute. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) ("[T]he threshold number of employees . . . is an element of a plaintiff's claim for relief."). Defendants argue Global Tool is not an employer under Title VII because it had fewer than fifteen employees, both because no more than ten individuals worked for Global Tool at the relevant time and because its workers were independent contractors, not employees.

### 1.     Number of Workers

Defendants assert that they could not have employed twenty individuals in 2018 for several reasons. First, they provide a letter drafted by their accountant indicating that "at no time has the company had over 10 employees and 1099 contractors in any given year." (Doc. 72-2 at 2.) Second, they provide a phone bill from 2020 showing that at that time, Global Tool had ten phone lines. (Doc. 72-2 at 16.) Third, they argue that at least some salespeople in the call center worked for Sean Doonan, whose LLC operated out of the same location. (Doc. 71 at 4.) However, Plaintiff recalls seeing at least twenty individuals working in the call center adjoining the reception area when she would go back to retrieve papers. (Doc. 74-1 at 22); (Doc. 74-1 at 83.)

Defendants have failed to show the absence of a genuine dispute of material fact on this issue. That Defendants had ten phone lines in 2020 does not conclusively show that they employed under fifteen people in 2018. Likewise, Plaintiff rightly notes that Mr. Doonan's LLC was not formed until December 2019, well over a year after Plaintiff left Global Tool. (Doc. 72-2 at 18.) The letter from Defendants' accountant, while certainly relevant, merely illustrates that Defendants and Plaintiff offer competing evidence bearing on the threshold factual question of whether Global Tool employed over fifteen individuals. As the Court is unable to weigh the evidence or make credibility determinations at summary judgment, this issue must be resolved by a jury. *See Anderson*, 477 U.S. at 255.

### 2.     Independent Contractor

As the statutory definition of "employer" explicitly requires that the entity have fifteen or more "employees," independent contractors do not count towards the threshold number of employees. *See Thompson v. Wiener*, CV-08-991-PHX-GMS, 2009 WL 5128559, at *6 (D. Ariz. Dec. 17, 2009); *Long v. Diamond Dolls of Nev., LLC.*, No. 3:19-cv-00652-LRH-CLB, 2020 WL 6381673, at *8 (D. Nev. Oct. 29, 2020) ("In determining whether an employer has fifteen employees, courts must not include independent contractors"); 42 U.S.C. § 2000e(f) ("The term 'employee' means an individual employed by an employer.").

To determine whether a worker is an employee or an independent contractor, courts look to "the hiring party's right to control the manner and means by which the product is accomplished." *Henry v. Adventist Health Castle Med. Ctr.*, 970 F.3d 1126, 1130 (9th Cir. 2020) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)). This is a "fact-specific inquiry which 'depends on the economic realities of the situation.'" *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999) (quoting *Mitchell v. Frank R. Howard Mem. Hosp.*, 853 F.2d 762, 766 (9th Cir. 1988)). The relevant factors are:

> [1] the skill required; [2] the source of the instrumentalities and tools; [3] the location of the work; [4] the duration of the relationship between the parties; [5] whether the hiring party has the right to assign additional projects to the hired party; [6] the extent of the hired party's discretion over when and how long to work; [7] the method of payment;[8] the hired party's role in hiring and paying assistants; [9] whether the work is part of the regular business of the hiring party; [10] whether the hiring party is in business; [11] the provision of employee benefits; and [12] the tax treatment of the hired party.

*Murray v. Principal Fin. Grp., Inc.*, 613 F.3d 943, 945–46 (9th Cir. 2010) (quoting *Darden*, 503 U.S. at 323).

While Defendants assert that Global Tool's commission salesmen are independent contractors, they do not brief the issue. (Doc. 71 at 4.) In the absence of briefing, Defendants have failed to establish the absence of a genuine dispute of material fact as to whether its workers were independent contractors or employees. Defendants have submitted five Form 1099s for the 2018 tax year, and a printout indicating that ten Form 1099s were generated for the 2019 tax year. (Doc. 72-2 at 4–9.) However, the tax treatment of the hired party is but one factor the Court must consider in determining whether Global Tool's workers were independent contractors or employees. Plaintiff asserts that the workers were employees. (Doc. 74-1 at 83.) And some *Darden* factors cut in favor of finding that the workers were employees: The workers were hired to sell construction tools, the principal aim of Global Tool's business. (Doc. 72-1 at 6–7.) Additionally, Plaintiff claims that all workers made calls from the call center in the room adjoining the reception area where Plaintiff worked, at least some of them conducted sales

calls on phone lines provided by Defendants, and that they were paid weekly and had scheduled shifts and lunch breaks. (Doc. 74-1 at 22, 83.) As this issue has not been fully briefed, and at least some *Darden* factors weigh in favor of finding the workers were employees, Defendants have failed to establish their workers were independent contractors as a matter of law. Plaintiff has likewise shown a genuine dispute of material fact as to whether Global Tool employed over fifteen employees, rendering summary judgment on Plaintiff's Title VII claim inappropriate.

### B. Arizona Civil Rights Act

As a prerequisite to bringing suit, Ariz. Rev. Stat. § 41-1481 requires a plaintiff to file a charge with the EEOC or the Arizona Civil Rights Division ("ACRD") "within [180] days after the alleged unlawful employment practice occurred." Ariz. Rev. Stat. § 41-1481(A). Failure to timely comply with § 41-1481 bars the claim. *See Ornelas v. Scoa Indus., Inc.*, 120 Ariz. 547, 548, 587 P.2d 266, 267 (Ct. App. 1978).

Defendants argue that because Plaintiff filed a charge with the EEOC on June 10, 2019, 222 days after the alleged unlawful employment practice on October 31, 2018, her charge is untimely as it pertains to her ACRA claim. (Doc. 71 at 6.) Plaintiff argues that her initial email to the EEOC on March 18, 2019 should be considered a charge and that she therefore timely filed her charge with the EEOC within 180 days. (Doc. 73 at 8.) Plaintiff's position is inconsistent with the text of both Title VII and the ACRA. *See* 42 U.S.C. § 2000e-5(b) ("Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires."); Ariz. Rev. Stat. § 41-1481(A) ("A charge shall be in writing on oath or affirmation and shall contain the information, including the date, place, and circumstances of the alleged unlawful employment practice, and be in the form as the division requires."). Plaintiff did not file any charge until she submitted her sworn charge to the EEOC on June 10, 2019. As a result, Plaintiff's ACRA claim (Count II) is untimely unless equitable tolling applies.

As the Court previously found, Arizona's equitable tolling rules apply to ACRA claims. (Doc. 43 at 3.) Under Arizona law, equitable tolling allows plaintiffs to extend an

expired limitations period "if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *McCloud v. State*, 217 Ariz. 82, 87, 170 P.3d 691, 696 (Ct. App. 2007) (quoting *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999)). Plaintiff argues the deadline to file her charge under the ACRA should be tolled because she was given incorrect information by the EEOC. (Doc. 73 at 11.) According to Plaintiff, because the EEOC is in a worksharing agreement with the ACRD, she believed that the EEOC's representation that she had 300 days to file her charge applied not only to her Title VII claim but also to any ACRA claims she wished to assert.[2] (Doc. 73 at 11.) However, Defendants rightly point out that the EEOC unambiguously told Plaintiff that it is "a federal law enforcement agency that enforces the federal discrimination laws."[3] (Doc. 71 at 8); (Doc. 74-1 at 93.) The EEOC's communications with Plaintiff make clear that its representations about deadlines apply only to "the federal discrimination laws." (Doc. 74-1 at 93.) Nor did Plaintiff make clear to the EEOC that she sought to file charges under state law as well as federal law: At no point in her correspondence with the EEOC does Plaintiff indicate that her concern about the 180-day deadline relates to preserving her remedies under the ACRA.

---

[2] As is relevant here, because Arizona has its own state agency empowered to investigate and remedy allegations of discrimination in employment, Arizona is "a so-called 'deferral' state." *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 1999). In deferral states, the deadline for a complainant to file her Title VII claim with the EEOC is extended from the ordinary 180 days to 300 days after the challenged practice, provided the complainant first initiates proceedings with the stage agency. 42 U.S.C. § 2000e-5(e)(1); *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019); *EEOC v. Com. Off. Prods. Co.*, 486 U.S. 107, 123–25 (1988). But where, like here, the ACRD and EEOC are parties to a worksharing agreement, "a complainant ordinarily need not file separately with federal and state agencies." *Davis*, 139 S. Ct. at 1846. The complainant "may file her charge with one agency, and that agency will then relay the charge to the other." *Id.*

[3] Defendants note that Plaintiff did not disclose the email from the EEOC which stated that it is a "federal law enforcement agency that enforces the federal discrimination laws" until the day before fact discovery closed. (Doc. 71 at 9–10). Plaintiff, for her part, argues that Defendants should have obtained the email from the EEOC. But as discovery in this case was governed by the Mandatory Initial Discovery Pilot ("MIDP"), Plaintiff was under an affirmative duty to disclose all documents and electronically stored information that she possessed and believed might be relevant to the claims or defenses of any party. (Doc. 6 at 7.) The Court also warned that "[p]arties who unreasonably postpone disclosure of relevant information to the end of the discovery period will also be subject to sanctions." (Doc. 52 at 2 n.1.)

On these facts, Plaintiff has not established that equitable tolling is appropriate. Plaintiff's sole authority to the contrary is *Kyles v. Contractors/Engineers Supply, Inc.*, 190 Ariz. 403, 949 P.2d 63 (Ct. App. 1997). There, the Arizona Court of Appeals applied equitable tolling when the plaintiff failed to file his complaint within ninety days of receiving his right-to-sue notice from the ACRD, as the ACRA required. *Kyles*, 190 Ariz. at 404–05, 949 P.2d at 64–65. Equitable tolling was appropriate because the right-to-sue notice erroneously stated that the plaintiff had a year to file his complaint, rather than ninety days, and he was "entitled to rely on the deadline in the notice from the [A]CRD." *Id.* at 406, 949 P.2d at 66. Unlike in *Kyles*, Plaintiff has not shown that the EEOC made any misstatements in its communications with her that misled her as to the deadlines she was required to comply with. The EEOC correctly stated that Plaintiff had up to 300 days to file a charge with the EEOC, and that her scheduled interview fell within the 300-day window. *See EEOC v. Com. Off. Prods.*, 486 U.S. 107, 123–25 (1988) (noting that the EEOC has "construed the extended 300-day period to be available regardless of state filing"). While it is unfortunate that Plaintiff assumed—despite the EEOC's explicit disclaimer that it only enforced "the federal discrimination laws," (Doc. 74-1 at 93)—that the EEOC also could advise her on state law deadlines, Plaintiff has not shown that this amounts to the sort of "sufficiently inequitable circumstance[]" that warrants tolling of the ACRA's clear statutory deadline.[4] *McCloud*, 217 Ariz. at 87, 170 P.3d at 696. As Plaintiff's ACRA charge was untimely filed and equitable tolling does not apply, summary judgment in favor of Defendants is granted as to Count II.

C.  **Constructive Discharge**

Plaintiff's claim for constructive discharge is premised on the alleged sexual harassment and discrimination that she experienced while working for Global Tool. (Doc. 44 ¶¶ 43–47.) Under Arizona law, constructive discharge is not a standalone tort. *See Goss v. United States*, No. CV-18-08077-PCT-DGC, 2020 WL 871247, at *6 (D. Ariz.

---

[4] Moreover, Plaintiff remained free to file a charge with the ACRD if she was unsatisfied with the EEOC's available appointments. Indeed, in states where worksharing agreements are in place, "Title VII instructs the complainant to file her charge first with the state or local agency." *Davis*, 139 S. Ct. at 1846.

Feb. 21, 2020). While "constructive discharge may transform a resignation into a discharge," the employee must still "prove a common-law or statutory claim for wrongful termination" to be afforded a remedy. *Peterson v. City of Surprise*, 244 Ariz. 247, 250, 418 P.3d 1020, 1023 (Ct. App. 2018). And in Arizona, the EPA, Ariz. Rev. Stat. § 23-1501(A)(3)(c), "limits the potential claims of an employee who has been terminated, whether directly or through constructive discharge" to those permitted under the statute. *Id.* "The statute allows suit by an employee who is terminated 'in violation of a statute,' specifically including a violation of the [ACRA]." *Id.* at 252, 418 P.3d at 1025. "But under the EPA, 'if [such a] statute provides a remedy to an employee for a violation of the statute, the remedies provided to an employee for a violation of the statute are the exclusive remedies for the violation of the statute.'" *Id.* (alteration in original) (quoting Ariz. Rev. Stat. § 23-1501(A)(3)(b)).

Plaintiff acknowledges that her claim for constructive discharge is based on an underlying ACRA violation and therefore "required exhaustion of administrative remedies." (Doc. 73 at 10.) As such, Plaintiff was required to file a charge that was timely for purposes of the ACRA in order for her claim of constructive discharge to be viable. *Peterson*, 244 Ariz. at 251–52, 418 P.3d at 1024–25 (holding that because the plaintiff "forfeited her exclusive remedy for sex discrimination under the [ACRA] by failing to file an administrative charge," her claim for constructive discharge based on "illegal sex discrimination in connection with employment" was barred). Because, as discussed above, Plaintiff's charge was not timely filed under the ACRA and equitable tolling does not apply, her constructive discharge claim is likewise barred. Summary judgment in favor of Defendants is granted as to Count III.

### D. Intentional Infliction of Emotional Distress

In Arizona, plaintiffs must establish three elements to recover for Intentional Infliction of Emotional Distress ("IIED"): "*first*, the conduct by the defendant must be 'extreme' and 'outrageous'; *second*, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his

conduct; and *third*, severe emotional distress must indeed occur as a result of defendant's conduct." *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987).

Plaintiff has failed to establish the third element of her IIED claim, namely that she suffered severe emotional distress. Whether a plaintiff has suffered sufficiently severe emotional distress is analyzed on a case-by-case basis. *Lucchesi v. Frederic N. Stimmel, M.D., Ltd.*, 149 Ariz. 76, 79, 716 P.2d 1013, 1016 (1986). "[A] line of demarcation should be drawn between conduct likely to cause mere 'emotional distress' and that causing 'severe emotional distress.'" *Midas Muffler Shop v. Ellison*, 133 Ariz. 194, 199, 650 P.2d 496, 501 (Ct. App. 1982) (quoting *Slocum v. Food Fair Stores of Fla., Inc.*, 100 So. 2d 396, 397 (Fla. 1958)) (finding crying and difficulty sleeping insufficient to establish severe harm); *Spratt v. N. Auto. Corp.*, 958 F. Supp. 456, 461 (D. Ariz. 1996) (finding "crying, being stressed and upset, and having headaches" insufficient); *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 747–48 (9th Cir. 2004) (finding shock, stress, depression, and estrangement from friends and co-workers insufficient under Arizona law). *But see Pankratz v. Willis*, 155 Ariz. 8, 12, 17, 744 P.2d 1182, 1186, 1191 (Ct. App. 1987) (finding anger, depression, headaches, and hemorrhoids sufficient to establish severe emotional distress); *Ford*, 153 Ariz. at 41, 44, 734 P.2d at 583, 586 (finding "high blood pressure, a nervous tic . . . chest pains, rapid breathing," dizziness, and fatigue sufficient evidence of severe emotional distress).

Plaintiff asserts that after leaving Global Tool she frequently cried, lost the ability to trust men in positions of power and developed anxiety in social settings. (Doc. 74-1 at 88–89.) She also testified that she "found [her]self in a depression," and went through cycles of weight loss and overeating. (Doc. 74-1 at 46–47.) Courts applying Arizona law have held that similar manifestations of emotional distress are insufficiently severe to recover for IIED. In *GLC Restaurants*, the Court dismissed the plaintiff-intervenors' IIED claim at summary judgment when they asserted that after being sexually harassed by the defendant's assistant manager, they began to suffer from an inability to trust men, depression, weight gain, loss of sleep, and anxiety. *EEOC v. GLC Rests., Inc.*, No. CV-

05-0618 PCT-DGC, 2006 WL 3052224, at *9–10 (D. Ariz. Oct. 26, 2005). Drawing on the Arizona cases cited above, the court held that while the plaintiff-intervenors' claimed "emotional effects approach the line of demarcation between emotional distress and severe emotional distress, . . . they do not cross it." *Id.* at *10. Here, Plaintiff's symptoms are largely consistent with those of the *GLC Restaurants* intervenor-plaintiffs. As she offers no cases which show that symptoms like hers amount to severe emotional distress under Arizona law, summary judgment for Defendants is appropriate on Count IV.

### E.     Alter Ego

Plaintiff seeks to hold Mr. Rozakis personally liable for the acts of Global Tool under an alter-ego theory. Even assuming an alter-ego theory of liability may permissibly be applied in the Title VII context—a necessary premise which was not briefed by either party—Plaintiff has failed to create an issue of fact sufficient for a jury to conclude Mr. Rozakis is an alter ego of Global Tool.

Under an alter ego theory, Plaintiff "must prove (1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice." *Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 37, 821 P.2d 725, 728 (1991). The following factors are relevant to determining whether unity of control exists:

> stock ownership by the parent; common officers or directors; financing of subsidiary by the parent; payment of salaries and other expenses of subsidiary by the parent; failure of subsidiary to maintain formalities of separate corporate existence; similarity of logo; and plaintiff's lack of knowledge of subsidiary's separate corporate existence

*Id.* Plaintiff claims Mr. Rozakis commingled his personal assets with those of Global Tool and that he used the entity for his "personal pleasure." (Doc. 73 at 14.) In support of her claim, Plaintiff provides an affidavit where she claims that she was told that her job responsibilities would include "filing his receipts which included personal items purchased such as gifts for his girlfriend." (Doc. 74-1 at 85.) However, Plaintiff offers no evidence that Mr. Rozakis regularly disregarded the corporate form, nor does she offer any other evidence bearing on the *Gatecliff* factors. As a result, she has failed to demonstrate a

genuine dispute of material fact that could lead a jury to conclude that Global Tool was an alter ego for Mr. Rozakis. Summary judgment is appropriate as to Mr. Rozakis; Plaintiff's remaining Title VII claim will proceed as to Global Tool only.

### F. Attorneys' Fees

Defendants request attorneys' fees, claiming that Counts I, II, and III are frivolous and without foundation. (Doc. 71 at 17.) Attorneys' fees awards to prevailing defendants on claims under Title VII and ARS § 41-1481 are governed by the same standard—the court may award attorney fees only if it finds that the plaintiff's action was frivolous, unreasonable, or without foundation. *Harris v. Maricopa Cnty. Superior Ct.*, 631 F.3d 963, 971 (9th Cir. 2011). Because Plaintiff's Title VII claim survives as to Global Tool, only Mr. Rozakis is potentially eligible for attorney's fees as to Count I. Both Global Tool and Mr. Rozakis are prevailing parties for purposes of Counts II and III. The Court declines to award attorneys' fees at this time. Even though some of Plaintiff's claims have been dismissed, the Court does not find they were "frivolous, unreasonable, or groundless." *Harris*, 631 F.3d at 971 (quoting *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422 (1978)).

### CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 71) is **GRANTED** in part and **DENIED** in part. Summary judgment is **GRANTED** as to Plaintiff's Title VII claim (Count I) against Mr. Rozakis, and Counts II, III, and IV in their entirety. Summary judgment is **DENIED** as to Plaintiff's Title VII claim (Count I) against Global Tool Supply LLC **only.**

**IT IS FURTHER ORDERED** directing the Clerk of Court to dismiss Defendant Bill Rozakis from this civil case.

Dated this 19th day of September, 2022.

_____
G. Murray Snow
Chief United States District Judge