**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicole Cox,<br><br>          Plaintiff,<br><br>v.<br><br>Global Tool Supply LLC,<br><br>          Defendant. | No. CV-20-00152-PHX-GMS<br><br>**ORDER** |

According to the stipulation of the parties, the Court held a bench trial on the remaining claim in this case on February 10, 2023.  The Court hereby makes its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.

## FINDINGS OF FACT

1.      Defendant Global Tool Supply, LLC ("Global Tool") is a company engaged in the sale of tool equipment.  Global Tool's managing member is Bill Rozakis.  Mr. Rozakis also ran Global Tool's business on a daily basis.

2.      The office of Global Tool in 2018 was located at 5005 S. Ash Avenue, Suite 8, Tempe, AZ 85282.

3.      Plaintiff, Nicole Cox, is an adult woman who worked for Global Tool as a part time receptionist from September 20, 2018, to October 31, 2018.

4.      The Global Tool office is a call center comprised of an entrance area and a back room with desks from which the salespersons called on various customers and potential customers to make sales.  Mr. Rozakis had a small office to the side of the entrance area.

5.      Plaintiff's desk was located in the entrance area, separate from the back room.  She was unable to view the back room from her desk because there was a wall separating the rooms.

6.      Plaintiff went into the back room on a few occasions to pick up sales sheets. When she did this, she would spend only a few seconds at a time in the back room.  She also entered the back room to use the restroom one to two times per shift, spending about a minute or two in the back room.

7.      In 2018, Global Tool paid at least ten salespersons, as evidenced by ten 1099 forms received into evidence.  (Ex. 10.)  No 1099 or W-2 form for Mr. Rozakis or Plaintiff was provided, but both Mr. Rozakis and Plaintiff were also paid by Global Tool in 2018.

8.      The back room had ten phone lines for Global Tool's salespeople to use. There were approximately ten desks in the back room for the salespeople.

9.      Former salesperson, Sean Doonan, began working out of Global Tool's office for his own company in May 2018.  He rented office space from Defendant and used Global Tool's call center.

10.      No checks were produced during discovery to demonstrate the number of individual workers who were paid by Global Tool in 2018.  The sales jobs that were offered at Global Tool generally have a high rate of turnover.

11.      In post-trial proceedings, Defendant disclosed all of Global Tool's checks from 2017 and 2018.[1]  The checks demonstrate that while twenty-three individuals or entities were paid as salespeople by Global Tool in 2017 and 2018, no more than nine salespeople were paid by Global Tool during any given week.  (Doc. 113.)

12.      Mr. Rozakis holds himself out as a "sugar daddy," as evidenced by his "sugar

---

[1] Defendant does not contest the authenticity of the checks submitted to the Court after trial.

daddy" business card.  (Ex. 2.)  On at least one occasion, Mr. Rozakis showed Plaintiff suggestive photos of another woman and Plaintiff testified that he told her about his sexual encounters.  (Ex. 1; Trial Transcript.)[2]  Plaintiff testified that Mr. Rozakis commented on her appearance and weight several times.  Plaintiff also testified that on one occasion, Mr. Rozakis asked her if she would like to be his "sugar baby," and told her to consider the benefits.

13.    Plaintiff terminated her employment at Global Tool on the same day Mr. Rozakis allegedly asked her to be his "sugar baby."

14.    After Mr. Rozakis's alleged discussion of sexual encounters and request to be Plaintiff's "sugar daddy," Plaintiff testified that she experienced emotional distress in the form of feeling in shock, confused, and distressed.  Around the time that she quit working at Global Tool, Plaintiff also testified that she experienced depression and weight fluctuations.  She also decided to change her major and took an additional year to graduate from college.

15.     Plaintiff experienced other challenges in her personal life while working for Global Tool, including challenges with her boyfriend and the death of her childhood dog.

16.    On direct examination, Plaintiff testified that she was unable to find work for two years after she left Global Tool because she did not have the capacity to deal with working, addressing her trauma, and being a full-time student.  On cross examination, however, Plaintiff testified that she obtained at least two jobs in 2019.  She testified that she was contracted at a company called "Epic" at some point in 2019.  She also testified that she worked at a massage parlor between December 2019 and February 2020.

17.    Plaintiff filed a charge with the EEOC and a Notice of Right to Sue letter was sent on October 24, 2019, finding reasonable cause to believe that a violation of Title VII had occurred.

18.    Plaintiff filed this case on January 21, 2020.  On that day, the Court provided

_____

[2] Because no parties have requested transcripts of the trial or oral arguments in this case, no official transcripts have been produced.  Citations to trial testimony or oral arguments are made in reference to internal unofficial transcripts produced by the Court Reporter.

notice to the parties that the Court was participating in the Mandatory Initial Discovery Pilot, and this case was subject to the pilot project.  (Doc. 6.)  It provided the parties with General Order 17-08, which outlined the instructions for participation in the pilot program. The Order explained that the parties were required to provide mandatory initial discovery responses before initiating any discovery in the case.  Notably, the Order explains that "[p]arties must provide the requested information as to facts that are relevant to the claims and defenses in the case, whether favorable or unfavorable, and regardless of whether they intend to use the information in presenting their claims or defenses."  (Doc. 6 ¶ 4.)

19.    In post-trial proceedings, Plaintiff disclosed her therapy notes, which show that Plaintiff attended therapy from August 2020 to January 2021.[3]  At trial, however, she testified that she attended therapy starting at some point in 2019 and continued in therapy through all of 2020 and all of 2021.

20.    Plaintiff was deposed in this case on August 13, 2021, and testified that she estimated at least 20 people worked in the office, but that she did not remember how many people she processed payroll for.  (Doc. 101-1 at 76-77.)  At trial, she testified that she recalled seeing between 20 to 25 salespersons in the back room.  She further testified that she remembered processing 17 to 18 checks every week.  She stated that this memory was specifically revived by "extensive trauma therapy since [her deposition]."  Her deposition, however, took place after all of Plaintiff's therapy had concluded.

21.    At Plaintiff's deposition, she also testified that she and her boyfriend broke up while she was working at Global Tool.  (Trial Transcript.)  At trial, however, she testified that they did not break up while she was working at Global Tool.

22.    Both parties failed to disclose documents or information in the MIDP Order that they subsequently relied on at trial.  For example:

 a.  Plaintiff listed only one document that she believed to be relevant to her claims or defenses—"text messages to/from Bill Rozakis."  (Doc. 101-1

---

[3] Plaintiff does not contest the authenticity of the therapy notes provided to the Court after trial.

at 3.)  At trial, however, she stated that she received extensive trauma therapy sessions that helped revive her memories of the events, including the number of employees at Global Tool.  She did not disclose any information regarding therapy in her initial MIDP disclosures although she sought some award for pain and suffering at trial.

b. Plaintiff listed two individuals who she believed to have discoverable information relevant to any party's claims or defenses—Nicole Cox and Bill Rozakis.  (Doc. 101-1 at 2.)  At trial, however, she stated that she confided in her father, her boyfriend, and her friends about being given Mr. Rozakis's "sugar daddy" business card.

c. Plaintiff provided no documents relevant to her employment after Global Tool.

d. Defendant listed two documents that it believed to be relevant to the claims or defenses in this case—a "[l]etter from Swart & Co., LLC confirming number of employees" and "[l]etter and emails re motion to dismiss complaint."  (Doc. 101-1 at 17.)  At trial, however, Mr. Rozakis testified that he possessed checks or check registers, personnel files, and/or employee schedules that would have demonstrated the number of potential employees at any given time, but that were not provided to Plaintiff or specifically listed in the initial MIDP disclosures.

23.   Plaintiff sought compensatory and punitive damages.  Although she did not introduce evidence of her pay while working at Global Tool, Plaintiff requested $200 per week for two years in compensatory damages.  She requested up to the statutory cap in punitive damages, as well as attorney's fees and costs.  Plaintiff's counsel stated that she was not seeking compensatory damages for the cost of therapy, but that she sought pain and suffering damages up to the statutory cap.  The Court informed Plaintiff that it would not consider her testimony about emotional distress for pain and suffering damages if Plaintiff did not disclose the therapy records in her MIDP responses.  Plaintiff's counsel

stated that the Court's suggested course of action "doesn't seem unfair."

## CONCLUSIONS OF LAW

### Discovery Violations

1.      Plaintiff and Defendant violated the MIDP Order by failing to disclose relevant documents and witnesses.

2.      In her mandatory initial disclosures, Plaintiff failed to disclose several witnesses who may have had discoverable information relevant to claims and defenses, including her father, boyfriend, and friends.  Additionally, in the initial disclosures she failed to disclose the name of her therapist and/or the existence of therapy notes.  It is not relevant that Plaintiff was not in possession of the notes because the initial disclosures require the identification of all relevant documents "whether or not in your possession, custody or control."  (Doc. 6 at 5.)

3.      In response to Defendant's discovery requests, on June 18, 2021, Plaintiff disclosed the name, address, and phone number of her therapist.  Four days before the close of discovery, Plaintiff provided a signed authorization for a release of her therapy documentation.

4.      The existence of Plaintiff's therapist and therapy notes proved highly relevant to Plaintiff's claim because, although at her deposition she could not remember how many checks she prepared for different employees, at trial she stated that she could remember eighteen checks.  When asked how she remembered better at trial than at her deposition, she stated "I've been through extensive trauma therapy since then and gone through the process of gaining those memories." (Trial Transcript.) Thus, Plaintiff directly relied on her therapy to attempt to prove an element of her claim.  Further, at trial, Plaintiff also sought recovery for her emotional pain and suffering without, until unreasonably late in discovery, identifying that she had received therapy during this time period.  The MIDP Order required her to voluntarily disclose this information in the MIDP Initial Disclosure.

5.      In Defendant's mandatory initial disclosures, it failed to disclose several documents that are relevant to Plaintiff's claims and Defendant's defenses.  Namely,

Defendant did not disclose the existence of personnel files, checks, or employee schedules. Additionally, even after Plaintiff subpoenaed Defendant's accountant's records on April 17, 2021, no checks or check registers were produced. (Doc. 103 at 3.) These documents are fundamentally relevant to Plaintiff's claims because she was required to prove that Defendant had fifteen employees as an element of the hostile work environment claim. Thus, because these documents would clearly bear on the question of how many independent contractors or employees Defendant had, they should have been disclosed. Defendant's argument that "Defendant's first supplemental disclosure provided all the evidence *it* used in the trial" is beside the point. (Doc. 101 at 14) (emphasis added). Defendant was required to disclose each document that might be relevant to either party's claims or defenses, which it clearly did not do.

6.      Plaintiff did not serve any discovery requests on Defendant. (Doc. 106 at 5.) She subpoenaed Global Tool's and Mr. Rozakis's tax returns from their accountant. (*Id.*)

7.      MIDP orders are court orders and Federal Rule of Civil Procedure 37(b) applies to violations of MIDP orders. (Doc. 6 ¶ 11); *SiteLock, LLC v. GoDaddy.com LLC*, 562 F. Supp. 3d 283, 297-98 (D. Ariz. 2022).

8.      Under Rule 37(b)(2), if a party fails to obey an order to provide discovery, the Court may issue "further just orders." Fed. R. Civ. P. 37(b)(2)(A). Such orders may include: "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; . . . (v) dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(i)-(v).

### Number of Employees

9.      A Plaintiff may only bring a Title VII sexual harassment claim against an employer, which is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar

weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b).  Thus, Plaintiff's allegations only fall within the ambit of Title VII if Global Tool is an "employer" within the definition of the statute.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) ("[T]he threshold number of employees . . . is an element of plaintiff's claim for relief.").

10.     It is clear that Defendant failed to disclose documents that were material to Plaintiff's ability to prove this element.  At oral argument, Plaintiff justifiably argued that she was deprived the opportunity to conduct discovery surrounding those documents, including questioning Mr. Rozakis about the documents at his deposition.  (Oral Argument Transcript, Apr. 28, 2023.)  When asked if she would like to opportunity to conduct such a deposition post-trial, however, Plaintiff declined.  (Oral Argument Transcript, Apr. 28, 2023.)

11.     Even so, no party disputes that the checks at issue should have been disclosed pursuant to the MIDP Order, and failure to do so materially affected Plaintiff's ability to conduct discovery and evaluate and/or settle or dismiss the case.  Therefore, as a sanction for Defendant's violation of the MIDP Order, pursuant to Rule 37(b)(2)(A), the Court would be open to finding that Defendant had fifteen employees, satisfying the threshold requirement for the claim, if the Plaintiff herself, had not withheld evidence that certainly would have impeached her testimony that her therapy made her able to remember the number of Global Tool's workers more clearly at trial than she did at deposition.  Fed. R. Civ. P. 37(b)(2)(A) (stating that courts may "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" in the event of a discovery violation).

12.     At trial, Plaintiff did not introduce evidence sufficient to permit the Court to find Defendant had fifteen individuals working in any capacity for twenty or more calendar weeks in 2017 or 2018.  Although Plaintiff relies on her observations, stating that she witnessed over fifteen employees at Global Tool, the weight of the evidence supported Defendant's contention that it did not have fifteen workers of any kind.  Defendant

1    provided evidence that only ten phone lines were installed in the back room and the space
2    could only comfortably hold ten desks.  The number of phone lines is especially persuasive
3    because Global Tool was a call center, and it is unlikely that call center employees shared
4    phone lines.  Further, Plaintiff testified that the workers appeared to work similar schedules
5    and hours, meaning it is also unlikely that workers shared phone lines during different
6    hours.  The fact that Plaintiff believes she saw twenty to twenty-five people in the back
7    room at various times does not overcome the evidence that only six to nine individuals
8    were paid each week over the course of 2018, approximately ten desks were in the back
9    room, and Global Tool only had ten phone lines.

10       13.    Additionally, Plaintiff's testimony is the only evidence in favor of a
11   conclusion that Defendant had fifteen employees. As noted above, her credibility was
12   severely undermined by the late-produced therapy records and inconsistencies between her
13   deposition and trial testimony.  Further, it is appropriate as a sanction to discount Plaintiff's
14   testimony concerning the number of employees Defendant had during her employment, to
15   the extent that she testified that her therapy revived her memories after her deposition.  This
16   is so because all of Plaintiff's therapy had been completed prior to her deposition.  Thus,
17   Plaintiff did not prove that Defendant had fifteen or more employees, which is a threshold
18   element to her Title VII claim.[4]

19                              **Hostile Work Environment**

20       14.    The Court finds that it is appropriate as a sanction to discount Plaintiff's
21   damages testimony to the extent that she failed to disclose evidence and witnesses that
22   could have directly impeached such testimony.

23       15.    To prevail on a hostile work environment claim, Plaintiff must show "(1) she
24   was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was
25   unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions
26   of . . . employment and create an abusive working environment."  *Little v. Windermere*
27   *Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002).  Additionally, Plaintiff may only

28   _____

[4] The Court need not speculate about the potential effect of this and other discrepancies
and withheld information on the trier of fact since the Court was the trier of fact.

1   recover damages that she proved were caused by the relevant harassment.  *See Elvig v.*
2   *Calvin Presbyterian Church*, 375 F.3d 951, 969 (9th Cir. 2004).   In an employment
3   discrimination claim, it is the Plaintiff's burden to prove damages.  *Gotthardt v. Nat'l R.R.*
4   *Passenger Corp.*, 191 F.3d 1148, 1158 (9th Cir. 1999).

5          16.    Plaintiff provided evidence that she was subjected to a sex-based hostile
6   work environment based on Mr. Rozakis's conduct, as evidenced by his "sugar daddy"
7   card, texts messages to her, and Plaintiff's testimony about Mr. Rozakis's repeated sex-
8   based comments.

9          17.     Nevertheless, while Mr. Rozakis's "sugar daddy" business card and status
10  with some young women inclines the Court to believe that he was quite capable of sexual
11  harassment,  several  inconsistencies  also  cut  into  Plaintiff's  credibility,  including:
12  (1) Plaintiff testifying that she did not obtain work for two years after leaving Global Tool
13  and then later testifying that she obtained two jobs in 2019 and 2020; and (2) Plaintiff
14  testifying at her deposition that she and her boyfriend broke up while she was at Global
15  Tool, and then testifying at trial that they did not break up.

16         18.    Additionally, while Plaintiff stated in her MIDP disclosures that the only two
17  witnesses that had knowledge of the relevant incidents were herself and Mr. Rozakis, she
18  testified at trial that she confided in her father, her boyfriend, and her friends about being
19  handed the "sugar daddy" card.  Defendant was thus unable to conduct discovery or cross
20  examine these individuals as to the veracity of Plaintiff's testimony.

21         19.    Although Plaintiff alleged that she experienced emotional distress after she
22  worked at Global Tool, was unable to work for some period of time, and ultimately changed
23  her major in college and graduated late as a result of the hostile work environment, she
24  introduced no evidence of damages aside from her own testimony.

25         20.    As noted above, Plaintiff failed to disclose her therapy records until it was
26  too late to practically pursue such discovery.

27         21.    While Plaintiff is not required to introduce objective evidence to prove
28  emotional distress damages, *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th

- 10 -

Cir. 2003), the therapy notes undermine several aspects of Plaintiff's testimony about her damages by rarely, if at all, referencing harm caused by Mr. Rozakis.  (*See* Doc. 114-1 at 6 (stating that therapist and Plaintiff "discussed [Plaintiff's] recent stress of being involved in a lawsuit in which Plaintiff has an upcoming court appearance")).  Plaintiff attended eight therapy sessions, and the single-sentence reference to the lawsuit is the only potential mention of the harassment at issue in this case.

22.    The notes also refer to several other contributing factors to Ms. Cox's emotional distress during the time period following her employment at Global Tool Supply, including anxiety about a car accident in summer 2018, significant school stress and stress from quarantine during the COVID-19 pandemic, and the death of her grandmother.  (Doc. 114-1 at 3.)

23.    Furthermore, the therapy notes undermine Plaintiff's testimony that she graduated a year late as a result of harm from Mr. Rozakis's harassment.  (Doc. 114-1 at 10 ("[Plaintiff] informed [therapist] that she has been feeling stressed with school after an in-person class was cancelled after concerns for Covid.  [Plaintiff] reports that she is unsure if she will be able to graduate on time as a result.")).

24.    As discussed above, Plaintiff's credibility was undermined throughout the trial, calling into question her testimony as to whether a hostile work environment existed and what damages, if any, she incurred as a result of a hostile work environment. Additionally, the late-disclosed therapy documents deprived Defendant of the ability to impeach Plaintiff's testimony about Mr. Rozakis's conduct and the effects it had on her. The therapy documents, at minimum, undermine Plaintiff's testimony about the extent of her damages and suggest other potential causes of the emotional distress she experienced around the period of time when she was employed at Global Tool.  Thus, in light of Plaintiff's diminished credibility, and as a sanction for her failure to disclose such material information under the MIDP Order, the Court finds that even if a hostile work environment existed, she cannot and has not proved any damages caused by a hostile work environment at Global Tool Supply.  *See* Fed. R. Civ. P. 37(b)(2)(A) (stating that courts may "direct[]

that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" in the event of a discovery violation).

25.     "Because damages are the only form of relief [Plaintiff] seeks under the complaint, it is an essential element of" her claim, "on which [she] bears the burden of proof at trial."  *Dema v. Allegiant Air, LLC*, No. CV-14-00968, 2017 WL 5983788, at *2 (D. Ariz. Mar. 30, 2017) (denying summary judgment on a hostile work environment claim where Plaintiff failed to show damages).  Thus, because Plaintiff cannot demonstrate any damages attributable to a hostile work environment, she cannot prevail on her claim.

## CONCLUSION

For the reasons stated above, the Court finds in favor of Defendant and enters judgment in its favor.[5]

**IT IS THEREFORE ORDERED** finding in favor of Defendant and directing the Clerk of Court to enter judgment accordingly.

Dated this 5th day of May, 2023.

G. Murray Snow
Chief United States District Judge

---

[5] The Court considered allowing the Plaintiff to request attorney's fees against Defendant for its failure to provide the necessary discovery concerning the size of Defendant's operation, for the continuation and expense of unnecessary litigation that Plaintiff might not have incurred once such discovery had been provided and explored.  Nevertheless, this failure seems no more egregious than Plaintiff's failure to provide discovery that called into question both her own recollection of the number of Defendant's employees as well as her damages claims.  It may be, as Plaintiff's counsel states, that Plaintiff was not aware of her obligation to disclose such therapy.  But her counsel certainly was or should have been aware of this obligation.  Counsel was under an obligation to advise her client of her discovery obligations and to seek and timely disclose any such discovery from her client.  The failure of counsel to timely do so makes it inappropriate in the extreme that she should benefit from a sanctions award without the benefit of Defendant having access to similar relief.